IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Anthony Snyder, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15 C 1160 |
| | ) |
| City of Chicago | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

In this action, plaintiff Anthony Snyder, a paramedic with the Chicago Fire Department ("CFD"), complains that the City of Chicago violated the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA") when it failed to offer him the opportunity for "cross-over training" to become a firefighter/paramedic based on his age. Before me is the City's motion for summary judgment, which I grant for the reasons that follow.

I.

On or around March 7, 2006, the City issued a "Firefighter/EMT Examination Announcement" stating that a written examination would be administered on May 25 and 26, 2006, as "the first step in the Chicago Firefighter/EMT

1

examination process." Pl.'s L.R. 56.1(b)(3)(C) Stmt., Exh. 8 (the "2006 Exam Announcement"). The 2006 Exam Announcement included the statement, "NOTE: Pursuant to the Municipal Code of Chicago 2-152-410, an applicant above the age of 38 may not be appointed." The referenced section of the Municipal Code provides:

> No person above the age of 38 may receive initial appointment as a probationary career service firefighter or firefighter/EMT with the fire department and no person above the age of 40 may receive initial appointment as a probationary career service police officer with the police department. Provided, however, that these age restrictions shall not apply to initial appointment as a probationary career service police officer or firefighter or firefighter/EMT from employment lists in existence on the date of passage of this ordinance.

M.C.C. § 2-152-410(e).[1]

Plaintiff was hired as a paramedic in CFD's Division of Emergency Services on April 3, 2006, when he was thirty-two years old. Shortly thereafter, he took and passed the written examination announced in the 2006 Exam Announcement and was placed on the firefighter "eligibility list" for training at the fire academy. Placement order on the eligibility list is assigned randomly based on the candidates' social security numbers. Aff. of Charles Stewart, III, Def.'s L.R. 56.1(A)(3) Stmt., Exh. C at ¶ 11. In addition, pursuant to the parties'

---

[1] When enacted, the ordinance provided that age 35 was the limit, but the ordinance was amended in March of 2006, just prior to the issuance of the 2006 Exam Announcement. *See* Def.'s L.R. 56.1(a) Stmt., Exhs. D-F.

2

Collective Bargaining Agreement, ten percent of each firefighter candidate class is reserved for "cross-overs," i.e., individuals who, like plaintiff, are paramedics already employed by the City, and who are selected for firefighter training based on seniority. *Id*.

Plaintiff's randomly assigned number on the eligibility list was 7736, which he acknowledges would have put him "out of the running" for firefighter training were it not for his placement on the cross-over eligibility list. Pl.'s L.R. 56.1(b)(3)(C) Stmt., Exh. 9; Opp. at 2-3. Plaintiff further acknowledges that the first firefighter training class in which he would have been eligible to participate based on his position on the cross-over eligibility list began on March 14, 2014. Def.'s L.R. 56.1(a)(3) Stmt., ¶ 25; Stewart Aff., ¶ 12. By that time, however, plaintiff was forty years old—two years over the age limit established in § 2-152-410(e). Accordingly, the City did not invite him to participate in firefighter training.

Plaintiff filed timely a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission based on the City's failure to afford him the opportunity to join the training class that began on March 14, 2014.[2] On September 30, 2014, the IDHR dismissed the charge

---

[2] The charge states that the candidate class began on March 4, 2014, but all other evidence in the record cites the date as March 14.

3

for lack of substantial evidence. Pl.'s L.R. 56.1(b)(3)(C) Stmt. Exh. 13. This lawsuit followed.

II.

The ADEA generally protects workers forty and over from age-based discrimination in employment. Its protection of older workers is not limitless, however. When the statute was enacted in 1967, it did not apply to state and local government employees. *Minch v. City of Chicago*, 363 F.3d 615, 618 (7th Cir. 2004). Indeed, as the Seventh Circuit explained in *Minch*, "[h]istorically, Chicago, like many other state and local governments, has placed age limits on the employment of its police and firefighting personnel." *Id*. After Congress amended the ADEA in 1974 to bring state and local government employees within its scope, these age limits became vulnerable to challenge, prompting Chicago's City Council to modify them to align with the statute. *Id*.

In response to concerns raised by state and local governments, however, Congress again amended the ADEA to exempt state and local rules establishing hiring and retirement age limits for police officers and firefighters. *Id*. at 618-19. Since 1996, the ADEA has expressly authorized such limits pursuant to 29 U.S.C. § 623(j). That section provides that it is not unlawful for a state or its political subdivisions "to fail or refuse to hire or to discharge any individual because of such

4

individual's age if such action is taken...pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter." 29 U.S.C. § 6230(j)(2).[3]

In 2000, the Chicago City Council exercised its authority under the exemption and enacted Municipal Code § 2-152-410.

---

[3] In full, the 1996 exemption provides:

> (j) **Employment as firefighter or law enforcement officer**.
>
> It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—
>
> (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained—
>
> (A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or
>
> (B) (i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or
>
> (ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of—
>
>> (I) the age of retirement in effect on the date of such discharge under such law; and
>> (II) age 55; and
>
> (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

*Minch*, 363 F.3d at 617. The Seventh Circuit examined the ordinance in *Minch* and considered under what circumstances mandatory age limits for public safety personnel might constitute "a subterfuge to evade the purposes of the ADEA." 363 F.3d at 617. It concluded that "[w]hat is necessary to establish subterfuge is proof that the employer is using the exemption as a way to evade another substantive provision of the act." *Id*. at 629. For example, the court explained, a plaintiff would have a valid subterfuge claim if he or she could show that a state or city government imposed age limits on public safety personnel "in order to retaliate against one or more employees for protesting practices made illegal by the ADEA," or could show that a local government "reduc[ed] the wages of all workers while substantially increasing the benefits provided to younger workers" as a means of effectuating wage discrimination against older workers. *Id*. at 630. But where age maximums are used precisely to establish a cap on the age at which police officers or firefighters can serve in those capacities, they amount to "the very type of age-based discrimination...that the statute permits," and are not "a vehicle to commit some other type of age discrimination forbidden by the ADEA." *Id*. Accordingly, there is no subterfuge. *Id*.

Plaintiff does not dispute that § 2-152-410 is generally a bona fide hiring plan, nor does he identify any "other type of

6

age discrimination forbidden by the ADEA" that is effectuated by § 2-152-410. Indeed, since the Seventh Circuit upheld the ordinance's application in *Minch*, several courts in this district have reiterated that it complies with the § 623(j) exemption. *See*, e.g., *Ledbetter v. City of Chicago*, No. 13 CV 9302, 2014 WL 4555579, at *3 (N.D. Ill. Sept. 15, 2014) (Dow, J.); *Vicenteno v. City of Chicago*, No. 14 CV 2574, 2014 WL 4122863, at *1-*2 (N.D. Ill. Aug. 21, 2014) (Shah, J.). Nevertheless, plaintiff contends that the City's reliance on § 2-152-410 to exclude him from the March 14, 2014, training class amounted to a subterfuge because he did not fall within the category of candidates to whom its maximum hiring age facially applies: candidates seeking an "initial appointment as a probationary career service firefighter or firefighter/EMT."

In plaintiff's view, the testimony of the City's Fed. R. Civ. P. 30(b)(6) witness, former First Deputy Fire Commissioner Charles Stewart, III, establishes that employees assigned to the CFD have one and only one "initial appointment" date, which is their date of hire. Plaintiff then reasons that because he was hired as a paramedic on April 3, 2006, he could not have been seeking an "initial appointment" as a firefighter/EMT when he applied for the position announced in the 2006 Exam Announcement. From this, plaintiff concludes that while § 2-152-410 may comply with § 623(j) as applied to new hires, it does

not fit within the ADEA exemption when applied to cross-over candidates like him. Neither the facts nor the law supports this argument.

First, setting aside that plaintiff cites to several pages of Deputy Stewart's deposition testimony that are not in the record,[4] the statements he extracts do not controvert Deputy Stewart's testimony elsewhere that it was the policy of the CFD to subject "all persons wishing to become firefighters to the age restriction" set forth § 2-152-410, regardless of whether they were cross-over candidates or prospective new hires, and that a candidate's age is considered as of the first date of attendance in the candidate training class. Stewart Aff., ¶¶ 13, 15. The essence of Stewart's cited deposition testimony is that an employee's "initial appointment" generally correlates to his or her "career service date," "date of hire," and "seniority." *See* Stewart Dep., Pl.'s L.R. 56.1(b)(3)(C) Stmt., Exh. 7, at 16-18. But even assuming that in some contexts—such as for ascertaining seniority under the CBA—an employee's "initial appointment" is the same as his or her date of hire, it makes no

---

[4] Plaintiff cites pages 16-19 and 63 of Deputy Stewart's deposition transcript, but neither page 19 nor page 63 is included in the excerpt plaintiff attaches as Exh. 7 (as numbered on the CM/ECF docket; plaintiff identifies it as Exh. 6) to his L.R. 56.1(b)(3)(C) Statement. In the remaining pages, Stewart's only reference to an "initial appointment" is as follows: "Q: Your initial appointment was the date you were hired back in 19 – September 1st, '76, correct? A: My career service date was September 1, 1976, correct." Stewart Dep. at 16:17-20.

sense, in the context of § 2-152-410, to sever the phrase "initial appointment" from the terms that immediately follow it, which define the nature of the job categories at issue, and are the *raison d'être* of the ordinance itself. Indeed, the whole point of the ordinance is to place limits on the ages at which an individual can become (in the case of hiring), and remain (in the case of retirement) a career service public safety employee.

As the City correctly points out, traditional rules of statutory construction require that the ordinance be construed to give effect to the legislative intent, and that it must be read as a whole and afforded its plain and ordinary meaning. *People v. Marshall*, 950 N.E. 2d 668, 673 (Ill. 2011). A natural reading of § 2-152-410, taken as a whole, reflects the Chicago City Council's determination that individuals who qualify, for the first time, for positions that perform firefighting functions may not be appointed to those positions if they are older than 38, regardless of whether they are already City employees qualified to perform other functions. Indeed, to construe the ordinance as mandating an age maximum only for new hires, while allowing cross-over candidates to take on firefighting positions at any age, would undermine, rather than further, the ordinance's stated purpose. *See Minch*, 363 F.3d at 620-21 (noting that the preamble of the ordinance cited the

protection of "the safety of Chicago residents" as its purpose); § 2-152-410 (preamble).

Nothing in plaintiff's lengthy discussion of the skills, licenses, and pay rates of the various unit ranks and titles of CFD employees is to the contrary. Although plaintiff devotes the bulk of his submissions to these issues, the argument section of his opposition brief fails to tie them to any cogent legal theory supporting an ADEA violation. In his sur-reply, plaintiff asserts that "the age 38 ordinance applies only if the 'initial appointment' is to the position of Firefighter/EMT," a rank he contends is "reserved for new employees, not crossing-over paramedics who become FF/PMs." Sur-reply at 5. As I understand this argument, plaintiff contends that because his credentials as a paramedic were superior to those required for the Firefighter/EMT position announced in the 2006 Announcement, he would have become a firefighter/paramedic, or "FF/PM," not a "Firefighter/EMT" upon successful completion of firefighter training, and thus was not subject to the age restriction on candidates for "initial appointment as a probationary career service firefighter or firefighter/EMT." Even if plaintiff is correct, however, about the rank he would have held if he had completed firefighter training, his argument is unpersuasive. Naturally, the broad job categories of "firefighter," "firefighter/EMT," and "police officer" covered by the ordinance

encompass numerous ranks, positions, and job titles within each of the relevant departments. But it would be unreasonable to expect that an ordinance such as § 2-152-410, whose stated purpose is to maximize public safety by capping the age at which public safety personnel can perform the duties associated with their positions, to draw fine distinctions among the various ranks and titles within the broadly recited job categories. Nor does plaintiff cite any evidence, or articulate any reasoned basis, to suggest that the City Council intended to restrict the age of incoming firefighters and firefighter/EMTs, but not to restrict the age of incoming firefighter/paramedics. At all events, nothing about the facts plaintiff raises in this connection reasonably suggests that the City's application of § 2-152-410 to cross-overs amounts to "a subterfuge to evade the purposes of the ADEA" under the standard articulated in *Minch*.

Plaintiff raises two additional arguments, but each fails to rebut the City's evidence that its application of § 2-152-410 to cross-overs is pursuant to a bona fide hiring plan and not a subterfuge to violate the purposes of the ADEA. In a similar vein to his argument that cross-over candidates do not seek "initial appointments" as firefighting personnel, plaintiff argues that cross-overs are outside the scope of the § 2-152-410 hiring age restriction because the restriction applies only to candidates for initial appointment as a "probationary" career

service firefighter or firefighter/EMT, while cross-overs have already served the nine-month probationary period established by the CBA. But the fact that the CBA imposes a probationary period on "[n]ew employees" does not preclude the construction of § 2-152-410 as applying equally to cross-over firefighter candidates, who, as plaintiff concedes, "are subject to return to their paramedic position should they be unsuccessful at the academy." Def.'s L.R. 56.1 Stmt., ¶ 29. Moreover, as discussed above, construing the ordinance as equally applicable to all first-time candidates for firefighting positions accords with the ordinance's stated purpose.[5]

Plaintiff's final argument, which relates specifically to Count II of his complaint, is the most perplexing. In Count II, plaintiff alleges that because he was already a City employee at

---

[5] Although plaintiff frames his claims in terms of subterfuge, his argument that § 2-152-410 does not apply to cross-over candidates seems better suited to the theory that while the ordinance may be a bona fide hiring plan, the City's decision to exclude him from training as a cross-over candidate was not made *pursuant to* that plan. As the Seventh Circuit explained in *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008), "[s]ection 623(j)(2) requires the state to act '*pursuant to* a bona fide hiring...plan' (emphasis added). It is not enough to *have* a plan." (ellipses, parenthetical, and emphases in original). Under *Davis*, plaintiff could potentially prevail on evidence that the City sometimes allowed cross-overs older than 38 to train for jobs within the scope of § 2-152-410, but declined to allow him to do so, since a jury could reasonably conclude on those facts that the decision not to hire him was not, in fact, "pursuant to" a bona fide plan. While that theory might rest on sounder legal footing, however, it is at odds with the record here, as Deputy Stewart testified without contradiction that the department's policy is to apply § 2-152-410 equally to new hires and cross-overs.

the time he applied for the position announced in the 2006 Exam Announcement, the City's age-based decision not to select him for firefighter training was not "a failure or refusal to hire" as required to fall within ADEA's § 623(j) exemption. But as defendant points out, plaintiff has no claim at all under the ADEA unless he alleges an adverse action. While plaintiff is entitled to frame his claim any way he wishes—as a failure to hire, a failure to promote, or a decision amounting to some other legally cognizable adverse action—he must, at this stage, articulate some theory on which a jury could conclude, based on the evidence, that defendant engaged in age-based discrimination of a kind other than the kind expressly permitted by § 623(j)(2) when it declined to consider him for a firefighting position based on his age. He has not done so.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated: June 23, 2017